## WALTER v. THE C. D. & M. R. Co.

39  33
6117 674

**Railroads.** N., who understood the English language imperfectly, was traveling upon a railway in the caboose of a freight train, and, upon the stopping of the train on the main track at a station where there were two side tracks, stepped out upon the front platform with two or three other persons, one of whom was an employe. The latter, seeing a train approaching from behind, called to N., with the others, to escape, and observing that he did not move, attempted to drag him from the platform, but was resisted, when the approaching train struck the car, and N. was killed. It was *held:*

1. CONTRIBUTORY NEGLIGENCE. That N. was not guilty of contributory negligence if he did not understand the meaning of the warning addressed to him, or know the purpose of the efforts to drag him from the car.

2. ———. While the train was at rest the platform could not be considered a place of danger, and the deceased had a right to presume that proper care would be exercised to prevent a collision.

3. ———. Defendant cannot escape liability for deceased's negligence, even if he had notice of the danger, unless he had possession of his mental faculties, or if these were stupefied by the magnitude of the danger; the jury might determine this fact from all the circumstances of the case.

4. ———. An instruction which left it to the jury to determine whether, notwithstanding deceased saw an approaching train, he had reason from all the circumstances of the case to apprehend a collision, was properly given.

5. EVIDENCE. Testimony that deceased lived many years ago in a state of squalor and wretchedness, was incompetent.

6. ———. To establish the credibility of a witness he may not be asked how many important offices he has held, his truthfulness being presumed.

7. ———. Evidence of the ignorance of deceased respecting the laws of the State, and the powers of certain officers, was irrelevant.

8. DAMAGES. A verdict of $4.500, deceased being about 60 years of age, and in the enjoyment of reasonable health, and of industrious habits, was not excessive.

*Appeal from Howard Circuit Court.*

### FRIDAY, JUNE 19.

PLAINTIFF, the administrator of the estate of Henry A. Nienau, deceased, brings this action to recover damages resulting to the estate of deceased, on account of the death of the

intestate caused by a collision of two trains upon defendant's road, on one of which he was a passenger, which was the consequence of negligence and want of skill on the part of defendant's servants running the trains. There was a verdict for plaintiff in the sum of $6,000. Upon a motion for a new trial the Circuit Court held that the damages were excessive, and that unless $1,500 should be remitted, a new trial would be awarded. A remittitur of that amount was entered by plaintiff, and thereupon a judgment was rendered for $4,500. Defendant appeals.

The facts of the case, so far as they are necessary to an understanding of the legal points ruled, are found in the opinion.

*S. P. Adams* and *A. J. Jordan*, for appellant.

*Noble, Hatch & Freese*, and *J. O. Crosby*, for appellee.

BECK, J.—In November, 1873, Henry A. Nienau, plaintiff's intestate, took passage upon a car, called a " caboose," attached to a freight train upon defendant's road, to be transported from Guttenburg to McGregor. He was sixty or sixty-five years of age, of ordinary health, quite hard of hearing, and could speak and understand the English language imperfectly. The train stopped at Clayton, and the deceased there went upon the front platform of the " caboose" in which he was riding. Two or three other persons were in the car; one of them, who was at the time of the accident an employe of the defendant, testifies that on going out upon the front platform he heard an " extra" freight train coming, and soon saw it approaching, in the language of this witness, " working heavy." He immediately called to the persons within to escape, who thereupon jumped from the car. The witness then said to deceased that " he had better be getting out of there." As he made no answer, witness supposing that he did not understand what was said, seized his person and attempted to drag him off the car, repeating his first words of alarm. Being unable to remove the deceased, the witness sprang off without him,

when, at the same instant, the approaching train struck the car and intestate was killed outright, his head being crushed between the cars.

The "extra" train was going in the same direction with the train upon which the intestate was a passenger, and, at the time of the collision, was running at the rate of ten miles an hour, at least. The car in which deceased was a passenger was at the time standing upon the main track. There were two side tracks at this place, and a switch 290 feet distant in the direction the "extra" train approached, which changed the cars to these side tracks. On account of a curve and obstructions the approaching engine was first visible to one upon the "caboose" at the switch, a distance of 290 feet as aforesaid.

The foregoing are undisputed facts. There was also evidence tending to show that immediately before the accident the deceased was in a position where he might have seen the approaching train; that is, the train would have been visible to him had he looked in that direction.

I. Proper instructions were given to the jury as to the liability of defendant for the death of the intestate, if it resulted from the negligence of defendant without any contributory negligence on his part. The following instructions were intended to guide the jury in determining whether the deceased contributed to his death by his own negligence:

"8. If deceased, while standing on the platform of the car, saw the approaching train, and was warned to get off, and resisted efforts to pull him off, knowing that such efforts were intended to free him from the danger of a collision, and was killed in consequence of remaining upon the platform when he might have escaped by the exercise of such care and caution as an ordinarily prudent person would have exercised under such circumstances, plaintiff cannot recover.

9. If the injury which caused the death of decedent would not have occurred but for the negligence of the employes of defendant, still if the injury would have been prevented by the exercise of ordinary care and caution on the part of decedent, the plaintiff cannot recover.

10. If Nienau was a passenger on defendant's train at the

time he was killed, he had a right to stand on the front plat-
form of the caboose whilst the train was standing at Clayton,
and whether such platform was the safest position possible or
not, Nienau had a right to presume that defendant would not
run an engine into the caboose while he was standing there, and
the deceased was under no obligation, without notice of dan-
ger, to be on the lookout for a collision; but if notified of such
danger, it was his duty then to be vigilant in his efforts to
avoid injury.

11. To show that Nienau had notice of the approaching
danger, it is not enough to show that he was told to get off, or
that he resisted an attempt to put him off. It must also appear,
from the evidence, that he was informed or knew of the dan-
ger, or why there was an attempt to put him off.

12. In deciding whether or not Nienau had notice of the
danger, you will take into consideration the circumstances
surrounding the transaction, his own conduct and that of others
about him; what was said to him, who said it, whether or not
he heard and understood, how long the danger lasted, and how
he was employed at the time the danger existed.

13. The fact that Nienau saw but an approaching train
would not alone prove negligence on his part, but you are to
judge from all the circumstances of the case whether Nienau
had reason to believe that such approaching train threatened
a collision.

14. If Nienau had notice of the danger he would not be
required to escape unless he had possession and control of
his mental faculties, and if these were stupefied or distracted
by the magnitude of the danger, the defendant cannot
escape liability on the ground that plaintiff did not act con-
siderately."

In our opinion these instructions are correct. The deceased
cannot be regarded as having contributed to his own death by
1. RAILROADS: negligence in not giving heed to warnings of dan-
contributory
negligence. ger, and in resisting the friendly efforts made to
drag him from the car, if he did not understand the words
addressed to him, or know the object and reason of the violent
efforts made by the person who attempted to remove him

from danger. The correctness of this proposition is too obvious to demand support by discussion.

II. The tenth instruction cannot be successfully assailed. While the train was at rest, the platform cannot be considered as a place of danger, and the deceased had a right to presume that proper care would be exercised to prevent a collision while the car was not moving. Neither does this position demand further support than its mere statement.

III. The fourteenth instruction is made the ground of a special objection. It is claimed that there was no evidence before the jury to which it is applicable. The jury would be authorized from all the circumstances of the case to determine, if deceased did see the approaching train at the time it was claimed he could have seen it, whether the danger was so threatening as to alarm, confuse, or stupefy the defendant, and whether he had time to recover the control of his faculties so that he could have exercised them for his safety. These questions the jury could well determine by applying their knowledge of men, obtained by experience in the affairs of life, to the facts disclosed by the evidence.

IV. The thirteenth instruction is claimed by defendant's counsel to be incorrect. It is shown by the evidence that at the place of the accident there were two side tracks, and there was a switch in the direction of the approaching train, intended to lead cars upon these tracks. The deceased, seeing these side tracks, and knowing the use of the switch, may have supposed the train causing the accident was intended to run upon the side tracks. The instruction left the jury to determine whether the existence of the side tracks and switch, with the knowledge of their proper use possessed by deceased, were sufficient to authorize a belief in his mind that the approaching car threatened no danger, but was intended to be run upon one of the side tracks.

Certain instructions asked by defendant, and refused by the court, contain principles in conflict with those above given; others embody rules which are distinctly announced in the instructions given. Their refusal in either case was not error.

V. The defendant offered to prove that many years ago

the deceased lived in a cabin in filth and wretchedness. The evidence was rightly rejected. It is difficult to see what relevancy the proposed evidence would have upon the question of damages, the point upon which it is claimed to be applicable. The value of the intestate's life, in the light of pecuniary considerations, was not affected by the fact of his indifference to comforts usually prized by people in this country. Indeed that kind of meanness proposed to be shown is usually practiced by men for the purpose of making and saving money. Besides, the evidence related to a time too remote. The jury would not have been justified from the proposed evidence to conclude that he continued in that way of life until he was killed.

*5. ———: evidence.*

VI. A witness introduced by defendant was asked to state how many important offices he had filled. An objection to the evidence was correctly sustained. The counsel for defendant claims that the evidence was admissible in order to show the credibility of the witness. The truthfulness of a witness is always presumed; there was no attempt to impeach this one. The proposed evidence was unnecessary for the purpose of establishing the witness' credibility.

VII. Evidence was offered and rejected tending to show the ignorance of the deceased in regard to the laws of the State, and the powers of certain officers. It was not relevant to any issue in the case. The deceased was a German, and could not speak the English language well. He could not be expected to be familiar with the laws of the State. His ignorance would not decrease the pecuniary value of his life to his estate, inasmuch as his pursuit did not require intelligence upon the subjects of law and government.

VIII. The verdict was for $6,000. But plaintiffs remitted $1,500 of that sum upon the order of the court on the motion to set aside the verdict because it was excessive. Defendants insist that the judgment is still excessive.

*8. ———: damages.*

The deceased was shown by the evidence to be from fifty-seven to sixty-five years of age, in the enjoyment of reasonable health, for a man of his years, of industrious habits, and pos-

sessed of some property. We think the amount of the verdict as reduced by the court below, is not so excessive as compensation for such a life as to authorize the presumption of passion and prejudice on the part of the jury.

We have examined all the points presented in the argument of defendant's counsel, and find no error in the rulings of the Circuit Court.

AFFIRMED.